Illinois Cent. R. R. Co. v. Curry.

CASE 65.—ACTION BY C. C. CURRY AGAINST THE ILLINOIS
CENTRAL RAILROAD CO. AND ANOTHER FOR
DAMAGES TO STOCK SHIPPED ON SAID RAIL-
ROAD.—December 19.

## Illinois Cent. R. R. Co. v. Curry

127    643
f129   454

127    643
f130   844

Appeal from Clark Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for plaintiff and defendant railroad com-
pany appeals—Affirmed.

1. Carriers—Live Stock—Connecting Carriers—Liability.—Where
live stock is shipped to a point within or without the State,
the contract of shipment made with the initial carrier is
binding on all connecting carriers who receive the live stock.
2. Same—Actions—Venue.—Where live stock is injured by the
negligence of any of the carriers having it in charge between
the points of reception and destination, an action may be
brought against the initial carrier in the county where the
contract of shipment was made.
3. Same—Parties.—In an action against an initial carrier for
injuries to live stock, all the connecting carriers against
whom it is sought to recover damages may be made parties
defendant; and, if brought before the court by process as
provided by Civil Code Prac., section 51, a judgment may be
given against any one or all of them that the evidence shows
to have committed the injuries.
4. Same—Liability of Connecting Carriers.—In an action against
one or several carriers for injuries to live stock, none of them
will be responsible for damages occurring beyond the end of
the lines controlled by them in the absence of a special
contract.
5. Same—Trial—Separate Verdicts—Instructions.—In an action
against several carriers for injuries to live stock, in the
absence of a special contract extending the liability beyond
the end of their respective lines, the jury should be instructed

to find a separate verdict against each carrier for the damages that occurred on its line.

6. **Same—Question for Jury.**—In an action against two connecting carriers for injury to live stock, plaintiff alleged that an oral contract of shipment was made with the initial carrier; that there were mutual traffic arrangements between the two roads, and that they were connecting lines; that the contract was made with the initial carrier acting on behalf of the other road; that the stock was shipped by the initial carrier, and delivered to the connecting carrier which agreed to ship it to its destination. The written contract under which defendant connecting carrier alleged that the shipment was made was substantially the same as the parol contract, except in respect to the limitation of each carrier's liability to injuries occurring on its line, and the evidence showed that the stock was received by the connecting road and carried to its destination. Held, That the refusal of the trial court to instruct peremptorily for defendant connecting carrier was not error.

7. **Pleading—Variance.**—A variance exists when the evidence does not sustain the pleadings on which a recovery is sought or a defense rested.

8. **Carriers—Injuries to Live Stock—Action—Pleading—Variance.**—Civil Code Prac., section 129, provides that no variance between pleadings and proof is material which does not mislead a party to his prejudice. Section 131 provides that, if the allegation to which the proof is directed be unproved in its general scope and meaning, it is not to be deemed a case of variance, but a failure of proof. Held, That where, in an action against connecting carriers for injury to live stock, plaintiff alleged that a verbal contract of shipment was first made and that a written contract was subsequently signed, and proved that a verbal contract was made, and defendants relied on a written contract and proved that one was entered into, there was no variance or failure of proof.

9. **Same—Failure to Feed and Water.**—Under Revised Stats. U. S., section 4386 (U. S. Comp. St., 1901, p. 2995), providing that no railroad company shall confine live stock in cars for a longer period than 28 hours without unloading for rest, water and feed, it is the duty of a railroad to be reasonably well prepared to care for stock at the places where it is unloaded for rest, water, and feed.

10. **Same—Measure of Damages—Instructions.**—Where in an action against a railroad for injuries to live stock shipped

under a contract, by which defendant was only liable for damages between the towns of L. and M., though the destination of the stock was A., some 200 miles beyond M., the evidence showed that the injuries were sustained between L. and M., the court properly instructed that the measure of damages was to be based on the condition of the stock on arrival at A.

TRABUE, DOOLAN & COX and J. SMITH HAYS for appellant.

CLASSIFICATION OF QUESTIONS AND AUTHORITIES.

1. The petition as amended did not by direct averment, or proper inference from the language used, allege that appellant had covenanted, in Clark county, Kentucky, to carry appellee's shipment. No cause of action ex contractu could be stated without such averment. (Louisville, etc., Ry. Co. v. Bennett, etc., 25 Ky. Law Rep. 834, 76 S. W. 408; Chicago & E. I. R. R. Co. v. Chestnut Bros., 28 Ky. Law Rep. 404, 89 S. W. 298; L. & N. R. R. Co. v. Wathen, 22 Ky. Law Rep. 82, 49 S. W. 145; Clark on Contracts, p. 511; Ency. of Pl. & Prac., vol. 15, pp. 524-582; Miles v. Miller, etc., 12 Bush (75 Ky.), 134; Moxley's Admr. v. Moxley, 2 Met. (59 Ky.), 309.)

2. The petition alleges a parol contract of shipment which was denied; the answers allege a written contract of shipment which appellee denied. The evidence of appellee showed that no parol contract was made and non-suit being asked should have been ordered. (Brown v. Warner, 2 J. J. M. (25 Ky.), 37; Rudd v. Thomas, 1 J. J. M. (24 Ky.), 299; Howard v. Chiles, 8 B. M. (47 Ky.), 377; Gossom v. Badgett, 6 Bush (69 Ky.); 97; Newton's Executor v. Field, 98 Ky., 186; L. & N. R. R. Co. v. Cooper, 19 Ky. Law Rep. 1152, 42 S. W. 1134; Richmond, N., I. & B. R. R. Co. v. Richardson, 19 Ky. Law Rep. 1488, 43 S. W. 465, 23 Ky. Law Rep. 2234, ** S. W. 1035; McCain v. L. & N. R. R. Co., 13 Ky. Law Rep. 809, 18 S. W. 537; Thomas v. L. & N. R. R. Co., 18 Ky. Law Rep. 164, 35 S. W. 910; Greer v. L. & N. R. R. Co., 94 Ky., 169.)

3. By independent covenants two independent carriers contract to transport a shipment, each over its own line and not beyond it, both lines forming part of the route to destination, the shipper will be required to sue the carriers separately on an alleged breach of contracts; suing both carriers in one action is a misjoinder. The facts being alleged in the answers and no evidence on the trial to the contrary being introduced, one of the defendants having contracted in a different county, non-suit should be ordered; first, because there is not joint obligation or liability;

second, because of the misjoinder; third, because of no jurisdiction over the carrier contracting in a different county. (Richmond, N., I. & B. R. R. Co. v. Richardson, 19 Ky. Law Rep. 1488, 43 S. W. 465, 23 Ky. Law Rep. 2234, 66 S. W. 1034; L. & N. R. R. Co. v. Chestnut & Bro., 72 S. W. 351, 24 Ky. Law Rep. 1864; Harris v. Campbell, 4 Dana (34 Ky.), 586; Ency. Pl. & Pr., vol. 15, p. 547; L. & N. R. R. Co. v. Cooper, 21 Ky. Law Rep. 1664, 56 S. W. 408; Owen & McKinney v. L. & N. R. R. Co., 87 Ky., 626; Bryan v. Memphis, etc., R. R. Co., 11 Bush (74 Ky.), 597; Ireland v. Mobile & O. R. R. Co., etc., 105 Ky., 400; Pittsburg, C., C. & St. L. Ry. Co. v. iers, etc., 68 S. W. 419, 24 Ky. Law Rep. 356; Nashville etc., R. R. Co. v. Carrico, 95 Ky., 489.)

4. The court erred in refusing the instruction asked and in giving the instruction to the jury on the measure of damages; and erroneously instructed the jury to allow damages to appellee, if it believed appellant failed to be reasonably well prepared in the way of places for feeding and water ing the stock. (Sutherland on Damages, section 917; C., N. O. & T. P. Ry. Co. v. Pendleton & Hudson, 29 Ky. Law Rep. 721, 96 S. W. 434; C., N. O. & T. P. Ry. Co. v. Logan & Hundley, 29 Ky. Law Rep. 1123, 96 S. W. 910.)

5. The instructions complained of disregarded valid and plain provisions in the contract of shipment and imposed upon the appellant duties and risks devolved by the contract upon the appellee. (I. C. R. R. Co. v. Holt, 29 Ky. Law Rep. 135, 92 S. W. 540; L., C. & L. R. R. Co. v. Hedges, 9 Bush (72 Ky.), 645; L. & N. R. R. Co. v. Wathen, 22 Ky. Law Rep. 82, 49 S. W. 185; L. & N. R. R. Co. v. Harned, 23 Ky. Law Rep. 1653, 66 S. W. 25; C., N. O. & T. P. Ry. Co. v. Greening, decided March 19, 1907.)

6. A claim based on the 28-hour law sounds in tort and not in contract, and the I. C. R. R. Co. can not be joined with the C. & O. Ry. Co. in a suit of that character and can not in fact be sued in Clark county upon such a claim, when it objects, as in this case, to both jurisdiction and joinder. (I. C. R. R. Co. v. Eblen, 24 Ky. Law Rep. 1609, 71 S. W. 919; C., N. O. & T. P. Ry. Co. v. Gregg, 25 Ky. Law Rep. 2329, 80 S. W. 512.)

7. The verdict of $700.00 against appellant, under all the facts and circumstances in the case, is excessive and should be set aside on that ground. Incompetent evidence was admitted over appellant's objections. (I. C. R. R. Co. v. Radford, 23 Ky. Law Rep. 886, 64 S. W. 511.)

BECKNER & JOUETT for appellee.

It must be apparent to the court that the contention of appellee

that his horses and mules were shipped under an oral contract is sustained by the opinions of this court in Caldwell v. C., N. O. & T. P. Ry. Co., 21 Ky. Law Rep., 397, and L. & N. R. R. Co. v. Cooper, 21 Ky. Law Rep., 1644. That it was a contract for through shipment is abundantly established by the evidence. As we have shown, it was made by the C. & O. R. R. Co. at Winchester for and on behalf of itself and appellant, and the contract there made was ratified by the Ill. Cent. R. R. Co. in accepting the stock at Louisville without other contract, as Caudill proves, and transporting it on to Memphis. In P. C., etc., R. R. Co. v. Viers, 24 Ky. Law Rep., 361, the court said: "In this case the L. & N. Co. made the contract for shipment. It contracted on behalf of itself and connecting carriers, without stipulating what carriers should complete the transportation to the point of destination. It limited its cwn liability to such damages as should occur upon its own line. It also undertook to further limit its liability, and the contract provides, that such limitation should inure to the benefit of connecting carriers. Although it is not shown that the P., C., C. & St. Louis Co. had knowledge of these provisions, it must be charged with knowledge that the L. & N. Co. received the cattle under some contract. Though, so far as the record shows, it did not know the terms of that contract, it should have ascertained them, or it could have limited its own liability by the terms of the receipt, which it gave for the cattle to the intermediate carrier, the Louisville Bridge Co., which received them from the L. & N. Co.'s terminus, and delivered them to the P., C. C., & St. L. Co. Having received the cattle without any such limitation, we are of opinion that in view of the authorities, it must be assumed to have accepted them under the terms of the original contract. The ratification was the ratification of the contract made in Hardin county. It bound the shipper, as if it had been s'gned in Hardin county by him and by the connecting carrier. When ratified, it bound the connecting carrier as if it had been there signed by it or its agent, and it became a contract made in Hardin county between appellees and the P., C., C. & St. L. Ry. Co." It will be noted that the court in this opinion says the L. & N. R. R. Co. "contracted on behalf of itself and connecting carriers," just as appellee in this action alleged in his petition that the C. & O. Ry. Co. "for and on behalf of itself and its codefendant, the Ill. Cent. R. R. Co.," made the contract therein alleged to transport his stock by through freight over the quickest route to Arcadia in Louisiana. If then there was sufficient evidence to justify the jury in believing that the C. & O. Ry. Co. for and on behalf of itself and appellant made a contract to

transport appellee's stock to Arcadia, Louisiana, and appellant received the stock at Louisville under this contract, and through its negligence the stock was injured, as is so abundantly proven, to the extent of thirteen hundred dollars, there can be no revarsal either for want of jurisdiction, or because the verdict was exceśsive. We think the record in this case will sustain all the rulings of the court and abundantly justify the finding of the jury.

### AUTHORITIES CITED.

Initial carrier agent of connecting line. (P., C., C. & St. L. R. R. Co. v. Viers, 24 Ky. Law Rep., 356.)

Venue. (Civil Code, section 73; L. & N. R. R. Co. v. Carrico, 95 Ky., 489.)

Bill of lading not binding. (Caldwell v. C., N. O. & T. P. Ry. Co., 21 Ky. Law Rep., 397; L. & N. R. R. Co. v. Cooper, 21 Ky. Law Rep., 1644.)

OPINION OF THE COURT BY JUDGE CARROLL— Affirming.

In this action appellee recovered a judgment against the Chesapeake & Ohio Railway Company and the Illinois Central Railroad Company for damages growing out of injury to stock shipped by him from Winchester, Ky. to Arcadia, La. There was a separate verdict against each of the companies; but, the recovery against the Chesapeake & Ohio Railway being less than $200, no appeal was prosecuted by it. The contract for the shipment of the stock was made with the agent of the Chesapeake & Ohio Railway Company in Clarke county, Ky. It is averred in the petition, and testified to by appellee, that this contract was in parol, but that after the stock was loaded on the cars a written contract in the form in use by railroads generally was presented to him by the agent, and signed. Both railroad companies denied that any parol contract for shipment was entered into, and relied upon the written contract, and all of the

stipulations contained therein, several of which they depended upon to relieve them from liability.

Numerous motions relating to the jurisdiction of the court, the misjoinder of actions, and other alleged defects in the pleadings were made, but we do not deem it necessary to consider any of them except the questions raised as to the jurisdiction of the court and the misjoinder of the causes of action. It is the settled law in this State, as declared by this court, that, where live stock or other freight is shipped from a point in this State to any other point within or without the State, the contract of shipment made with the initial carrier, whether it be verbal or written, is binding upon all connecting carriers, whether immediate or remote, who receive the live stock or freight. And, if the property is injured by the negligence of any of the carriers having it in charge between the point of reception and destination, an action may be brought in the county where the contract, verbal or written, was made against the initial carrier, and in such action all of the connecting carriers against whom it is sought to recover damages may be made parties defendant, and, if before the court by process executed in the manner provided in section 51 of the Civil Code of Practice, a judgment may be given against any one or all of them that the evidence shows to have committed the injuries complained of. Each connecting carrier to the point of destination receiving the freight will be considered as having constituted and appointed the initial carrier its agent for the purpose of entering into the contract of shipment, and will be liable upon the contract made with the initial carrier the same as if it had been made directly with it. P. C. C. & St. L. Ry. Co. v. Viers, 113 Ky. 526, 24 Ky. Law Rep.

356, 68 S. W. 469; Nashville R. Co. v. Carico. 95 Ky. 489, 26 S. W. 177, 16 Ky. Law Rep. 66; L. & N. R. Co. v. Chestnut, 72 S. W. 351, 24 Ky. Law Rep. 1846. But in an action against one or several carriers neither of them, in the absence of a special contract, will be responsible for injury or damage occurring beyond the end of the lines controlled and operated by them. Ireland v. Mobile & Ohio R. Co., 105 Ky. 400, 20 Ky. Law Rep. 1586, 49 S. W. 188, 453; L. & N. R. Co. v. Chestnut, 72 S. W. 351, 24 Ky. Law Rep. 1846; C., N. O. & T. P. Ry. Co. v. Greening, 100 S. W. 825, 30 Ky. Law Rep. 1180. And in the trial of a case against several carriers, in the absence of a special contract extending the liability beyond the end of their respective lines, the jury should be instructed to find a separate verdict against each carrier for the injury or damage that occurred upon its line.

It is earnestly urged that as the contract declared on was alleged to have been in parol, and appellee in his evidence attempted to establish this fact, the peremptory instruction asked by the Illinois Central Railroad Company should have been given, as under the parol contract set up the Chesapeake & Ohio Railway Company was liable for all damages that occurred to the stock during the entire course of their transportation. The petition charged that there were mutual traffic arrangements between the Chesapeake & Ohio Railway Company and the Illinois Central Railway Company, and that they were connecting lines one with the other, and that the contract was made with the Chesapeake & Ohio Railway Company acting for and on behalf of its codefendant, the Illinois Central Railway Company, and that the stock were shipped from Winchester to Louisville over the Chesapeake & Ohio Railway, and there delivered to

its connecting carrier, the Illinois Central Railroad Company, and that it agreed to ship them to Arcadia, via Illinois Central Railroad, and the evidence established that, when the car in which the stock were transported arrived at Louisville over the Chesapeake & Ohio Railway, it was there delivered to the Illinois Central Railroad, and carried to its destination.

The appellee could have sued on the written contract, and, if he had done so, no question under the evidence could have been raised about the liability of the connecting carrier who received the stock under the written contract, or as to the jurisdiction of the Clark circuit court; nor does the fact that appellee declared on a parol contract defeat the jurisdiction of that court or affect his right to recover against appellant. Whether there was or not a traffic arrangement between the roads that authorized the Chesapeake & Ohio Railway Company to receive the stock for transportation to Arcadia, and to send them a part of the way over the lines of the Illinois Central Railroad, it is a fact that the Illinois Central Railroad did receive the stock from the Chesapeake & Ohio Railway Company and carry them part, if not all, the way to Arcadia, and, having received them, the Clarke circuit court had jurisdiction of it. P. C. C. & St. L. R. Co. v. Viers, supra. Under the pleadings and evidence of appellee, the contract, although in parol, provided for the shipment of the stock from Winchester to Arcadia by the Chesapeake & Ohio Railway Company and its connecting carrier, the Illinois Central Railroad Company. The written contract also stipulated that the stock should be shipped from Winchester to Arcadia by these two carriers. So that, except in respect to the limitation of each

carrier's liability to injuries that occurred on its line, there was no substantial difference between the parol contract relied on by plaintiff and the written contract set up by the defendant. And, when the trial judge came to instruct the jury, he did not point out the character of contract under which the stock were received, but treated the written contract as the real one between the parties, and informed the jury that the Chesapeake & Ohio Railway Company was only liable for injuries sustained by the stock between Winchester and its terminal at Louisville, Ky., where they were delivered to the Illinois Central Railroad Company; and that the liability of the Illinois Central Railroad Company terminated at Memphis, Tenn., the end of its line.

Nor was there either a variance or a failure of proof within the meaning of sections 129 and 131 of the Civil Code of Practice. Under section 129 a variance exists when the proof introduced by a party in support of his cause of action differs from the acts constituting the cause stated in his pleadings. For instance, if a person should charge that he was injured by a defective air brake on a railroad train, and his evidence established the fact that he was injured by a defective coupler, there would be a variance; and so, if an action was brought to recover the amount of a promissory note alleged to have been executed by the defendant, and the proof developed the fact that he had made a check in place of a note, there would be a variance. A variance exists when the evidence does not sustain the pleadings upon which a recovery is sought or a defense rested. Tyler v. Coleman, 97 S. W. 373, 29 Ky. Law Rep. 1270; Gaines v. Deposit Bank of Frankfort, 39 S. W. 438, 19 Ky. Law Rep. 171; Henderson Brewing Company

v. Folden, 76 S. W. 520, 25 Ky. Law Rep. 969; Simpson v. Carr, 76 S. W. 346, 25 Ky. Law Rep. 849. There is a failure of proof when, in the language of the Code, "the allegation of a claim or defense to which the proof is directed be unproved, not in some particular or particulars only, but in its general scope and meaning;" as, for instance, if the pleader wholly fails to sustain the cause of action or defense relied on. To illustrate, if it was sought to recover the value of a horse alleged to have been sold by the plaintiff to the defendant, and the plaintiff's proof failed to show that the horse was sold, so where a covenant is sued upon and there are conditions precedent to be performed by the plaintiff, which he alleged he did perform, but wholly fails to prove them. Newman's Pleading & Practice, p. 726. But in the case before us the plaintiff declared on a verbal contract and proved that a verbal contract had been entered into. The defendant relied on a written contract, and proved that a written contract was entered into. Hence it was simply a question of whether the contract was verbal or written—each of the parties introducing evidence to support their respective contentions. If this constituted a variance or a failure of proof, then in every case where an issue was made, although each party supported his side of it, there would be either a variance or a failure of proof. The fact that the plaintiff's proof may not be as strong or convincing as the defendant's does not affect the question. If he introduces any evidence tending to support the allegations of his pleading, he is entitled to go to the jury upon the case as he has made it out.

Among the charges of negligence alleged in the petition was the one that the stock were confined in

the car for a longer period of time than 28 consecutive hours, in violation of section 4386 of the United States Statutes (U. S. Comp. St. 1901, p. 2995), and that, when unloaded, they were not properly fed and cared for. There was evidence tending to establish that on two occasions the statute was violated, and also that, when the stock were unloaded for the purpose of resting, feeding, and watering, the company was not prepared to take reasonable care of them for these purposes. The jury were instructed, in substance, that it was the duty of the railroad company to rest, feed, and water the stock as provided in the statute, and to be reasonably well prepared to care for them at the places they were unloaded for these purposes. This statute should be given such construction as will fairly carry out the object of its enactment. A carrier, when it undertakes to unload stock for the purpose of resting, feeding, and watering, should be reasonably well prepared to care for them in such manner as that they will be rested, fed, and watered; and this without reference to whether the owner is in charge of them or not. The instruction complained of imposed upon the railroad company no duty that was not fairly contemplated by the statute. C., N. O. & T. P. Ry. Co. v. Gregg, 80 S. W. 512, 25 Ky. Law Rep. 2329; C. & O. Ry. Co. v. American Exchange Bank, 92 Va. 495, 23 S. E. 935, 44 L. R. A. 451; N. C. & St. L. Ry. Co. v. Heggie, 86 Ga. 210, 12 S. E. 363, 22 Am. St. Rep. 453; Illinois Central R. Co. v. Eblin, 114 Ky. 817, 24 Ky. Law Rep. 1609, 71 S. W. 919; Hutchinson on Carriers, section 634.

On the question of damage, the jury were instructed that "although the Illinois Central Railroad Company was only liable for injury to the stock between Louis-

ville and Memphis, Tenn., that the measure of damage against the company is what the jury may believe from the evidence was the difference, if any, between the market value of plaintiff's stock in Arcadia upon its arrival there and what would have been its market value at that point upon its arrival there but for the failure of the company in one or more of the respects indicated in this instruction." The objection made by appellant to this instruction is that it made the condition of the stock upon their arrival at Arcadia, some 200 miles beyond Memphis, Tenn., one of the criterions of the damage appellee suffered, in place of measuring the damage by their condition at Memphis, Tenn. There was no evidence tending to show any negligence or injury between Memphis and Arcadia. All the damage and injury sustained was between Louisville and Memphis. As the carriers agree to transport the stock to Arcadia, appellee could not have recovered for damages sustained by them in transit, unless they were delivered at Arcadia in a damaged condition. Although the stock might have been injured between Louisville and Memphis, yet, if they arrived at Arcadia in a good condition, appellee would not be entitled to recover anything. The condition of the stock when they reached Arcadia, the point to which the carriers agreed to ship and deliver them in good condition, was the standard by which the rights of the parties must be measured. Any other rule would be impracticable. Suppose the stock had been injured in transit from Louisville to Paducah, Ky., which is between Louisville and Memphis, and appellee in an action against the carrier had shown the condition of the stock at Paducah, but not at Arcadia, the objection would at once be made that its liability was not to be measured by the condi-

tion of the stock at Paducah, but their condition at
the place to which it agreed to transport them. Again,
if stock were shipped a distance of several hundred
miles, under a contract for safe delivery at the place
of destination, and between half a dozen stations en
route they received distinct injuries, would it be nec-
essary to show the depreciation in value at each place
the injury was sustained? And would this be suf-
ficient to warrant a recovery against the carrier with-
out evidence of their condition when delivered at
destination? We think not. The only logical and
correct method is to fix the measure of damage, as
was done in the instruction, and which confined the
liability of appellant to injuries occurring on its line.
Of course, if the stock had been damaged or injured
between Memphis and Arcadia, the Illinois Central
Railroad Company would not be liable for such injury
or damage, but there was none.

The amount allowed by the jury was not excessive;
and the judgment must be affirmed.

Petition for rehearing by appellant overruled.